SMITH v. FREEMAN.

Opinion delivered December 19, 1927.

1. TAXATION—REDEMPTION OF LANDS SOLD AT TAX SALE.—Where the statute providing for the mode of redemption of lands sold for general taxes was complied with, except that the county clerk acted for the county treasurer in receiving the redemption money and executing the receipt therefor, *held* that there was a substantial compliance with the statute, and that the redemption was effective, especially where the tax purchaser was not prejudiced by the irrgularity.

2. TAXATION—REDEMPTION FROM TAX SALE.—Redemption of land from a tax sale under the statute was effective, though the county clerk, acting for the county treasurer, accepted a check from the owner instead of cash.

Appeal from Garland Circuit Court; *Earl Witt,* Judge; affirmed.

*Cobb & Cobb,* for appellant.

*Murphy & Wood,* for appellee.

SMITH, J. Appellant brought five suits in the Garland Circuit Court against appellee Freeman, as the clerk of the county court of that county, to compel him to issue tax deeds for lands sold to appellant for the nonpayment of the general taxes for the year 1922. Owners of the respective tracts of land thus sold were made parties to the several suits. Appellant alleged his purchase of the various tracts of land at the tax sale; that he had received certificates evidencing such purchase; that the time for redemption had expired, and that redemptions had not been perfected; that he had presented his certificates of purchase to the clerk and demanded deeds in exchange therefor, with a tender of the fees allowed the clerk by law, and that this demand had been refused, wherefore mandamus was prayed requiring the clerk to execute deeds.

An answer was filed by the clerk, alleging that each of the tracts had been redeemed by the respective owners. The court found the fact so to be, and dismissed the suits, and this appeal is from that order and judgment.

There appears to be no substantial controversy about the facts, which may be briefly stated as follows:

Appellant had for many years been engaged in buying lands at tax sales, and in these operations was represented by Jack Hudgins, an experienced land man, who was thoroughly familiar with all the public records, and especially so with the tax records. Appellant furnished the money with which delinquent lands were purchased, and Hudgins attended to all the details of the same, including the bidding in of the lands, the collection of redemption money when redemptions were effected, and the procuring of deeds where no redemptions were made, and as compensation for his services he was given a one-third interest in all lands for which tax deeds were obtained.

Section 10100, C. & M. Digest, provides the "mode of redemption" of lands sold for general taxes. Its provisions are that: "Any owner * * * desiring to redeem any land * * * sold for taxes * * * may, within the time limited by law for such redemption, deposit with the county treasurer, upon the certificate of the clerk of the county court describing such land, * * * an amount of money equal to the taxes for which such land * * * was sold, together with penalty and cost and the taxes subsequently paid thereon by such person, * * * with interest at the rate of ten per centum per annum on the whole amount so paid, and the county treasurer shall, upon the payment of said sum, within ten days thereafter notify the purchaser that said sum is in the treasury and subject to his order."

Section 10101 prescribes the "duty of county treasurer." Its provisions are that: "Upon the presentation of such certificate of the clerk of the county court to the county treasurer, and upon the payment of the money to the treasurer as aforesaid, he shall give the person making such payment duplicate receipts therefor, describing the land * * * as the same is described in or upon the certificate of the clerk of the county court aforesaid, one of which receipts shall be registered by the treasurer and immediately filed with the clerk of the county court by the person receiving

the same, and thereupon the clerk of the county court shall forthwith cancel the sale and transfer such land, * * * and such receipt when so filed shall operate as an extinguishment of all rights, either in law or equity, conferred in any way or manner by such sale.''

Section 10102 prescribes the ''duty of the county clerk.'' Its provisions are that: ''In all cases where such deposits shall be made within two years from the time of sale of such lands for delinquent taxes, the clerk of the county court shall, at the request of the person presenting the receipt of the county treasurer for such deposit, note such fact on the back of said certificate, and sign his name thereto. When any tract * * * is thus redeemed, or any deposit with the county treasurer is thus made, it shall be the duty of the clerk of the county court to note such redemption or deposit, the date thereof, and by whom made, on his record of tax sales, and sign his name officially thereto.''

Appellant insists there has been no substantial compliance with these provisions of the statute, but the testimony establishes the following facts: The respective landowners applied to appellee, as county clerk, to redeem their forfeited lands. The clerk made out the proper certificates of redemption and advised the owners the amounts necessary to effect a redemption, including the fee of the clerk, and this sum was paid to the clerk by the owner, and the clerk signed the receipt acknowledging the payment of the money in the name of the county treasurer, and the clerk thereupon made the notations upon the records required by the above-quoted sections of the statute.

The clerk testified that he signed the name of the treasurer with the knowledge and consent and by the express authority of that official, and that he held the money thus paid to and for the use of the treasurer until it was actually delivered to that official. The county clerk further testified that his office and that of the county treasurer were in adjoining rooms, with a connecting door, and that each was in the other's office very

frequently. At the time of the attempted redemptions the treasurer was an invalid, and was receiving treatment in connection with the baths at Hot Springs every other day, and these treatments consumed a large part of the afternoon on the days when they were administered, and during such times the treasurer was absent from his office.

All of the redemptions were effected in the manner above stated, well within the time allowed by law, except in the case of one owner, who applied to redeem his land the day before the expiration of the two-year period allowed by law for redemption. Hudgins was present on this occasion, and, when the owner had received his redemption certificate, signed by the clerk as such, and by the clerk in the name of the treasurer, Hudgins protested that a proper redemption had not been effected, for the reason that a check, and not money, had been paid, but the clerk testified that he received the check as cash, and that he would then have paid Hudgins the amount due appellant on the redemption of the land in cash had Hudgins been willing to receive it, but Hudgins admitted that he did not ask for the money, and did not want it; that what he did want was a deed to that and the other land.

It was not shown that the tax purchaser was not properly advised of the various redemptions; indeed, the clear implication from all the testimony is to the contrary in each case, it being the admitted purpose of the purchaser to demand deeds upon the theory that the law had not been complied with in effecting the redemptions.

It was shown that the custom in regard to redemptions stated above had prevailed in that county for many years, and Hudgins had been engaged in buying lands at tax sales for more than twenty years, was familiar with this custom, and had frequently been paid redemption money by the clerk for the treasurer.

Of course, this testimony could not change the law, but it does show that appellant and his agent were

advised of the manner in which the redemptions in question were effected, and that appellant could have had the return of the money due him at any time after the attempted redemptions, but Hudgins candidly admitted that he wanted the land, and not the money.

There was a literal compliance with the statutes quoted, except the receipt of the money by the clerk for the treasurer, instead of the payment to and the execution of the receipt for the money by the treasurer himself. But we think, under the facts stated, that there was such a substantial compliance with the statute as to make the redemptions effective, and that the court below was correct in so holding. The money reached the hands of the officer entitled to its custody, and the tax purchaser could have had his money had he been content to take it. None of his rights were prejudiced by the irregular manner in which the money reached the treasurer's hands.

The check above referred to was paid in due course, but it was accepted by the clerk at his peril, and it is unnecessary to decide whether he could have canceled the redemption had the check been dishonored, as it was paid.

The judgment of the court below is correct, and it is therefore affirmed.